# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## Civil Action: 1:20-cv-01161

| | |
|---|---|
| WANDA COCKERHAM, | ) |
| Plaintiff, | ) |
| v. | ) |
| LIBERTY HEALTHCARE MANAGEMENT, INC; LIBERTY HEALTHCARE PROPERTIES OF YADKIN COUNTY, LLC; LIBERTY HEALTHCARE INSURANCE, LLC; LIBERTY HEALTHCARE PROFESSIONALS, LLC; JARE HOLDINGS, LLC; LIBERTY HEALTHCARE GROUP, LLC; LIBERTY COMMONS NURSING AND REHABILITATION CENTER OF YADKIN COUNTY, LLC | ) **AMENDED COMPLAINT** |
| Defendants. | ) |

The plaintiff, Wanda Cockerham, complaining of defendants, and amending her Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a), alleges the following:

## JURISDICTION AND VENUE

1. Plaintiff has instituted this action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (hereafter "ADEA"), and the common law of North Carolina to recover damages for the violation of her protected rights and North Carolina law. Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117(a), 29 U.S.C. § 626(c), and 28 U.S.C. § 1331.

1

## PARTIES

2. The plaintiff, Wanda Cockerham, is a resident of Yadkin County, North Carolina. At all times pertinent to this action, the plaintiff was an "employee" of defendants within the meaning and definition of the ADEA, 29 U.S.C. § 630(f), and North Carolina law.

3. The defendant Liberty Healthcare Management, Inc. is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. The defendant Liberty Healthcare Management, Inc. owns and operates senior health-care and residential facilities throughout North Carolina, including Yadkin County. At all times pertinent to this action, defendant Liberty Healthcare Management, Inc. employed in excess of 50 employees and was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina.

4. The defendant Liberty Healthcare Properties of Yadkin County, LLC is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. At all times pertinent to this action, defendant Liberty Healthcare Properties of Yadkin County, LLC was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina.

5. The defendant Liberty Healthcare Insurance, LLC is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. At all times pertinent to this action, defendant

Liberty Healthcare Insurance, LLC was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina.

6. The defendant Liberty Healthcare Professionals, LLC is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. At all times pertinent to this action, defendant Liberty Healthcare Professionals, LLC was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina.

7. The defendant JARE Holdings, LLC is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. At all times pertinent to this action, defendant JARE Holdings, LLC was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina.

8. The defendant Liberty Healthcare Group, LLC is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. At all times pertinent to this action, defendant Liberty Healthcare Group, LLC was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina.

9. The defendant Liberty Commons Nursing and Rehabilitation Center of Yadkin County, LLC is established under North Carolina law, transacting business throughout the state, and upon information and belief, has its principal offices in Wilmington, North Carolina. At all times pertinent to this action, defendant Liberty Commons Nursing and Rehabilitation Center of Yadkin County, LLC was the "employer" of plaintiff within the meaning and definition of the ADEA, 29 U.S.C. § 630(b), and the common law of the state of North Carolina. Defendant Liberty

Commons Nursing and Rehabilitation Center of Yadkin County, LLC is named as plaintiff's employer on her 2020 W-2 Wage and Tax Statement received by plaintiff via mail on January 25, 2021.

10. All of the defendants share the same principal office address and registered mailing address of 2334 S. 41st Street Wilmington, NC 28403 listed with the North Carolina Secretary of State.

11. All of the defendants share the same registered agent listed with the North Carolina Secretary of State.

12. Upon information and belief, the defendants share common ownership, corporate headquarters, common employment policies, and a shared financial structure.

13. At all times pertinent the defendants[1] operated, in whole or in part, as an integrated enterprise with common management, centralized control, common corporate headquarters, and have a distinct identity of interest with one another.

14. Upon information and belief, defendants operate as alter egos for one another and do not have independent will, but carry out of the will of defendant's ownership.

## **FACTS**

15. Plaintiff was born on March 6, 1952 and is currently 68 years old.

16. Plaintiff was initially employed by Triad Medical Services, Inc. in October 1977, which was located at 903 West Main Street, Yadkinville, NC 27055 in Yadkin County.

17. In 1978, plaintiff became the Director of Nursing at the 903 West Main Street, Yadkinville, NC 27055 health-care and senior resident facility.

---

[1] Except as otherwise referred to, all defendants are referred to hereafter, collectively, as "defendant."

18. Plaintiff worked at the 903 West Main Street health-care facility from April 1978 until February 1, 2020 as the Director of Nursing.

19. Plaintiff's job duties included managing and directing all operations at the 903 West Main Street facility.

20. Plaintiff was one of the oldest employees employed by defendant at the time of her termination.

21. During the entire period of plaintiff's career, she was commended for her performance and received incremental raises and bonuses based on her performance.

22. At all times during plaintiff's employment with defendant, she met or exceeded any reasonable expectations of defendant in the performance of her duties.

23. Upon information and belief, plaintiff was the longest serving Director of Nursing at the same nursing or health-care facility in the state of North Carolina.

### Defendant's Acquisition of Plaintiff's Prior Employer

24. In the fall of 2019, plaintiff received notice that defendant would be acquiring her employer, and plaintiff would become an employee of defendant following the acquisition.

25. The original date of acquisition was scheduled for October 1, 2019, but the official acquisition date was subsequently postponed multiple times until on or about February 1, 2020.

### Defendant's Discriminatory Treatment of Plaintiff

26. From November 18-21, 2019 defendant's management visited the 903 West Main Street facility as part of the upcoming acquisition to meet employees and tour the facility.

27. During the visit, defendant's Nurse Consultant, Regina Hinkle, told plaintiff that defendant "*didn't know what to do with*" plaintiff. This statement was in relation to plaintiff's continued employment with defendant following the completion of the acquisition.

28. During plaintiff's first meeting with defendant in November 2019, Jeff Wilson, Chief Operating Officer (COO), and Sandy McNeil, one of defendant's owners, inquired if plaintiff intended to keep working or retire. During the meeting the COO and Mr. McNeil pressed plaintiff for an answer on how long plaintiff wanted to continue working.

29. Plaintiff consistently expressed in the meeting that she did not have any plans to retire and indicated a desire to continue working for an indefinite period of time. It was clear to plaintiff the COO and Mr. McNeil were displeased with plaintiff's response to their repeated questioning.

30. In December 2019, plaintiff had another meeting with Paul Babinski, defendant's Long-Term Care President, and defendant's COO to discuss plaintiff's employment with defendant following the acquisition. Plaintiff expressed interest in the Administrator position for the facility once defendant took over control and ownership of the facility in February 2020.

31. The Administrator job duties were similar or identical to those that plaintiff performed for the past 42 years as the Director of Nursing.

32. Defendant's management asked plaintiff during the December 2019 meeting about plaintiff's retirement plans and whether she would commit to working for a specified duration of time.

33. When plaintiff provided the same answer as she had in the November 2019 meeting with defendant that she wished to work for an indefinite period of time, plaintiff was told she would be allowed to retire in a manner "*fitting someone with 43 years of service.*"

34. Plaintiff, along with some of her colleagues, attended a meeting in January 2020 at defendant's corporate headquarters in Wilmington, North Carolina to discuss the upcoming acquisition and defendant's employment policies. David Snow, a member of defendant's

6

Employee Relations Department, spoke to plaintiff and her colleagues. Mr. Snow indicated that if any employee had a concern or issue regarding their employment, that he welcomed and encouraged that individual to contact him to seek help or to discuss.

35. On or about January 27, 2020, plaintiff attended an interview with Mr. Babinski and Elizabeth Lockett, an applicant for employment with defendant.

36. Ms. Lockett is substantially younger than plaintiff and has significantly less employment experience than plaintiff, including experience in the administration of a health-care facility.

37. During the interview, and in the presence of plaintiff, Mr. Babinski asked Ms. Lockett if she would have any interest in taking the Administrator role at the facility if an opening was available.

38. On or about February 1, 2020, defendant officially took over control and operation of the facility. The facility has approximately 150 nursing beds and has approximately 175 residents in total in various housing units at the facility at any given time.

39. Plaintiff's job responsibilities did not change starting on February 1, 2020 and she continued performing the same job functions until her termination on March 6, 2020.

40. On or about February 3, 2020, John Sexton, defendant's Interim Administrator, began working at the facility where plaintiff worked.

41. Shortly after Mr. Sexton began working at the facility, he began to make statements and encourage plaintiff to consider retirement.

42. On February 13, 2020 Mr. Sexton again mentioned that plaintiff should retire and that she was three years older than Mr. Sexton was. Plaintiff was shocked by the conversation and indicated that she enjoyed working and wanted to continue her career.

7

43. Plaintiff had not previously told Mr. Sexton her age or communicated to him a desire to retire. Mr. Sexton and Mr. Babinski repeatedly mentioned there would be *"changes"* coming soon in the weeks prior to plaintiff's termination.

44. On or about February 20, 2020 plaintiff approached Mr. Sexton at a training session and asked him to stop making comments about her age and her plans for retirement. Plaintiff reiterated her desire to continue working indefinitely.

45. On or about February 23-24, 2020 plaintiff was in e-mail communication with David Snow who is employed by defendant's Employee Relations Department.

46. During a phone call on or about February 25, 2020, plaintiff made Mr. Snow aware of the conversations she had with Mr. Sexton and the comments about her age and retirement.

47. On or about February 25, 2020 plaintiff complained to David Snow and made defendants aware of statements made by defendant's leadership and ownership over the past several months about her age and defendant's desire that she retire. Plaintiff requested the discriminatory statements cease and to allow her to continue with her job duties without further harassment.

48. Mr. Snow acknowledged the complaints of plaintiff but failed to take any action to address them or initiate an investigation into the discriminatory conduct by defendant.

**Defendant's Unlawful Termination of Plaintiff's Employment**

49. On or about the morning of February 26, 2020 Mr. Sexton again mentioned to plaintiff that she should retire instead of continuing to work.

50. Upon information and belief, prior to plaintiff's termination, defendant directed members of defendant's management and Employee Relations Department to "find" or manufacture a reason to terminate plaintiff.

51. Later that same day plaintiff was informed by defendant that she was to leave the facility immediately so an investigation could be conducted into her performance and conduct.

52. Plaintiff was notified of her termination on or about March 6, 2020 for allegedly violating defendant's policies and state regulations. Defendant's failed to identify the specific policy or regulation plaintiff had violated which caused her termination. Subsequent to her termination, defendant filed a complaint related to plaintiff with the North Carolina Board of Nursing.

53. Defendant's allegations are inaccurate and the reasons for plaintiff's termination were pretextual.

54. Upon information and belief, plaintiff has been replaced by defendant with an employee who is substantially younger, less experienced, and performing the same or similar job functions as plaintiff performed.

55. The North Carolina Board of Nursing concluded their investigation into the complaint made by defendant against plaintiff on December 3, 2020 without substantiating a violation of the North Carolina Nursing Practice Act committed by plaintiff. The North Carolina Board of Nursing took no further action and concluded their review without taking any disciplinary action against plaintiff.

56. Plaintiff's unlawful termination has adversely impacted her career and standing in the health-care profession, including finding subsequent employment.

## ADMINISTRATIVE REMEDIES

57. On July 13, 2020, plaintiff filed Equal Employment Opportunity Commission (EEOC) Charge # 435-2020-00977, with the EEOC office in Greensboro, North Carolina.

58. Plaintiff's charge alleged age discrimination and retaliation in violation of the ADEA.

59. EEOC Charge # 435-2020-00977 was subsequently transferred to the EEOC's Raleigh office for investigation.

60. On August 25, 2020, EEOC issued notice of plaintiff's right to sue with respect to her charge against the defendant.

61. Plaintiff has complied with all procedural prerequisites prior to filing this claim.

### FIRST CLAIM FOR RELIEF
### Age Discrimination in Violation of the ADEA

62. Plaintiff hereby incorporates the foregoing paragraphs as if fully set out herein.

63. As stated above, plaintiff was a member of the protected age class under the ADEA, who was, at the time of her termination, consistently performing at a level higher than substantially younger employees who were similarly situated; and as a result of plaintiff's termination, substantially younger, less experienced and less qualified employees received favorable treatment, assuming her duties while performing at a lower level than plaintiff.

64. Defendant's reasons for its termination of plaintiff were pretextual, and unworthy of belief.

65. Defendant wrongfully and intentionally discriminated against plaintiff because of her age in violation of the ADEA, 29 U.S.C. § 621, in terminating plaintiff on March 6, 2020 and replacing plaintiff with a substantially younger and less qualified employee.

66. As a proximate result of defendant's acts of age discrimination against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses, and is entitled to appropriate relief pursuant to the ADEA, including compensatory and

10

Case 1:20-cv-01161-CCE-JEP   Document 15   Filed 01/26/21   Page 10 of 15

liquidated damages, and reasonable attorneys' fees and costs for her representation herein pursuant to 29 U.S.C. § 626.

## SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of the Public Policy of North Carolina -- Age Discrimination

67. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

68. The public policy of North Carolina, as expressed in N.C. Gen. Stat. § 143-422.2, mandates that employers of fifteen or more employees shall not discriminate on the basis of age. At all times pertinent to this claim, defendant employed in excess of fifteen employees.

69. As stated above, plaintiff was a member of a protected age class, who was, at the time of her termination, consistently performing at a level higher than substantially younger employees who were similarly situated; and as a result of plaintiff's termination, substantially younger, less experienced and less qualified employees received favorable treatment, assuming her duties while performing at a lower level than plaintiff.

70. Defendant's reasons for its termination of plaintiff were pretextual, and unworthy of belief.

71. Defendant wrongfully and intentionally discriminated against plaintiff because of her age in violation of the public policy of North Carolina, as follows:

    a. In terminating plaintiff's employment on March 6, 2020;

    b. In retaining younger, less qualified, and less experienced employees at the time of plaintiff's termination.

72. Plaintiff will suffer irreparable harm in the absence of equitable relief from this Court, and there is no adequate remedy at law to prevent such harm. Accordingly, plaintiff is

entitled to declaratory, injunctive and equitable relief including reinstatement of plaintiff to her position with defendant.

73. As a proximate result of defendant's violations of the public policy of North Carolina, plaintiff has incurred and suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of quality and enjoyment of life, and employment reputation; and other losses to be proven at trial.

74. Defendant's acts, as described above, were deceptive, willful and wanton, and evinced an intentional or reckless indifference to and disregard for the civil rights of plaintiff. Aggravating circumstances concerning defendants' conduct are provided in ¶¶ 12-56 above. Accordingly, plaintiff is entitled to punitive damages in an amount to be determined by the jury.

## **THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of ADEA**

75. Plaintiff hereby incorporates the allegations of the foregoing paragraphs as if fully set forth herein.

76. At all times pertinent to this action, plaintiff was a protected member of the class as an individual who had made complaints about discrimination in the workplace prohibited by the ADEA.

77. Defendant's reasons for termination of plaintiff were pretextual, and unworthy of belief.

78. Defendant's wrongfully and intentionally retaliated against plaintiff for opposing and reporting age discrimination in violation of ADEA, and in terminating plaintiff on March 6, 2020.

79. As a proximate result of defendant's illegal acts of retaliation against plaintiff, plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

80. Plaintiff is entitled to appropriate relief pursuant to ADEA, including compensatory damages and reasonable attorneys' fees and costs for his representation herein, as set forth below.

## PRAYER FOR RELIEF

The plaintiff requests the following relief:

(1) That plaintiff be reinstated to her position with defendant, with back pay and all benefits and seniority rights;

(2) That plaintiff recover of the defendant economic and compensatory damages in an amount in excess of $100,000;

(3) That plaintiff recover liquidated damages pursuant to 29 U.S.C. § 626;

(4) That plaintiff recover punitive damages in an amount to be determined by the jury;

(5) That plaintiff recover the costs of this action, including reasonable attorneys' fees for her representation herein as required in 29 U.S.C. § 626, and 42 U.S.C. § 1988;

(6) That plaintiff recover pre-judgment and post-judgment interest on all damages awarded herein; and

(7) That this Court grant such other relief as it deems just and appropriate.

## REQUEST FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury on all issues presented herein.

This is 26th day of January 2021.

                                                  /s/Daniel C. Lyon
                                                  Daniel C. Lyon (43828)
                                                  Attorney for Plaintiff
                                                  ELLIOT MORGAN PARSONAGE, PLLC
                                                  300 E. Kingston Ave, Suite 200
                                                  Charlotte, NC 28203
                                                  Telephone: (704) 707-3705
                                                  Email: dlyon@emplawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/Daniel C. Lyon
Daniel C. Lyon (43828)
Attorney for Plaintiff
ELLIOT MORGAN PARSONAGE, PLLC
300 E. Kingston Ave, Suite 200
Charlotte, NC 28203
Telephone: (704) 707-3705
Email: dlyon@emplawfirm.com